IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

LOUIS MICHAEL GOULET,     )
     Plaintiff,     )
     )     Case No. 7:19-cv-00701
v.     )
     )
MIDDLE RIVER REGIONAL JAIL     )     By:     Michael F. Urbanski
AUTHORITY BOARD, et al.,     )     Chief United States District Judge
     Defendants.     )

## MEMORANDUM OPINION

This matter is before the court on defendants Middle River Regional Jail Authority Board, Jeffrey L. Newton, and Jack Lee's motion to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 66. Plaintiff Louis Michael Goulet opposes. ECF No. 69. For the reasons discussed below, the court will **GRANT** defendants' motion to dismiss.

## I.

Plaintiff Louis Michael Goulet alleges that on Sunday, May 12, 2019, while housed at the Middle River Regional Jail ("MRRJ"), he fell in his cell from the top bunk and broke his right arm because there were no ladders in the cell for inmates to use.[1] Forty-five minutes later, when an officer was passing by his cell, Goulet told the officer that he needed to go to the medical department. Goulet was taken to the medical department, where he first reported his broken arm to Licensed Practical Nurse Angela Robinson. See Am. Compl., ECF No. 53, at ¶ 21. After Robinson asked Goulet to lift his arm above his shoulder and saw that he was

---

[1] Goulet is now in custody at the Rockingham-Harrisonburg Regional Jail. See Am. Compl., ECF No. 53, at ¶ 3.

unable, Robinson said that she was not sending him to the hospital and gave him ibuprofen and a sling for his arm. Id. at ¶¶ 22-26. Robinson also stated that several nurses would be working the next day, and she would let them worry about Goulet's arm. Id. at ¶ 25. Robinson did not (1) prescribe stronger medication to Goulet; (2) begin the process of obtaining a stronger pain medication for Goulet's injury; or (3) make an entry in Goulet's file on May 12, 2019, noting that she had seen him that day, which violated an MRRJ mandate. Id. at ¶¶ 27-29. On May 14, 2019, Robinson made an entry in Goulet's file, stating:

> Inmate was brought to medical with complaints of a fall [he] stated he was getting down from top bunk, placed his foot on the metal table to get down and slipped and fell to the ground[.] . . . Instructed inmate that I would place him on the physician list to be seen by Dr. Hereford and ask for a VO for X-Ray.

Id. at ¶¶ 30-31. However, during his May 12 visit, Goulet did not follow up with a physician nor did he receive an x-ray. Id. at ¶¶ 32-33.

On May 13, 2019, Goulet again tried to be seen by a physician, but several nurses denied this request. Later that day, Goulet filed a Medical Request, asserting:

> I fell from my bunk on Sunday at 7:00 am. Pretty sure my right arm is broken. I was seen in medical Sunday morning and was told I would have x-rays done and see the orthopedic by the nurse here. Its over 30 hours later in severe pain and nothing is being done. I was given one Ibuprofen Sunday morning. Could someone please get my arm x-rayed and put in a cast if it is [in] fact broken. I've never heard of waiting this long especially for a fracture to be looked at. And can I have ibuprofen for pain?

Id. at ¶ 53. Eventually, Goulet was taken to the medical department. Goulet received x-rays thirty-three hours after his fall.

On May 14, 2019, Goulet filed an inmate grievance, complaining that nurses were refusing to help him, and he had still not been seen by a doctor. At 7:00 p.m. that day, Goulet

was seen by Dr. Lee Hereford. The appointment lasted less than five minutes, and Dr. Hereford did not physically examine Goulet's arm. Dr. Hereford continued Goulet on ibuprofen, scheduling him for intramedullary rodding (IMR) surgery "as soon as possible." Id. at ¶¶ 86-88. From May 14, 2019, to May 20, 2019, when Goulet received surgery, Goulet complained of pain, numbness, spasms, and extraordinary swelling in his right arm.

On May 20, 2019, rather than receiving the IMR surgery as expected, Dr. Hereford performed a plate and screw repair on Goulet, which was not the standard approach. Id. at ¶¶ 108-110. During the surgery, Goulet alleges that blood sprayed out and splattered on Dr. Hereford's surgical gown, indicating that Dr. Hereford made some mistake. Id. at ¶ 112. Goulet was not informed of Dr. Hereford's decision to switch from the IMR surgery to the plate and screw repair. Following Goulet's surgery, Dr. Hereford prescribed Oxycodone/Percocet for Goulet. But Goulet was not offered any physical therapy or rehabilitation following his surgery. Goulet was eventually taken back to his cell where he was given a ladder to access the top bunk. Id. at ¶ 129.

Goulet asserts that because Dr. Hereford made a mistake during his surgery and he did not receive any form of physical rehabilitation, his arm is permanently damaged, alleging he experiences chronic pain in his right arm, numbness, weakness, and reduced sensation. Moreover, Goulet contends that because there are no ladders in inmates' cells, they often climb on tables or jump to reach the top bunk, injuring themselves frequently, of which MRRJ was aware. Id. at ¶ 165.

Jack Lee was terminated as superintendent of MRRJ in December 2018, id. at ¶ 5, and Jeffrey Newton became the superintendent of MRRJ on June 3, 2019, id. at ¶ 7.

3

Goulet now brings a four-count claim against various defendants,[2] asserting Dr. Hereford and Nurse Robinson's acts and inactions, in their individual capacities, violated his Eighth Amendment right to be free from cruel and unusual punishment by receiving adequate medical care (Count I). Goulet also seeks declaratory and injunctive relief against the MRRJ Authority Board and Jeffrey Newton, in his individual and official capacity as superintendent and policymaker of the MRRJ Authority Board, contending that the MRRJ Authority Board's policy of housing inmates without access to a ladder, and Newton's failure to adopt a ladder policy even though the facility was aware that inmates were injuring themselves without one, violates his Eighth Amendment right to be free from cruel and unusual punishment by being subject to an unsafe physical facility (Count II). Next, Goulet alleges a <u>Monell</u> claim against the MRRJ Authority Board and Jack Lee, in his official and individual capacity as superintendent and policymaker of the MRRJ Authority Board, on the same grounds as Count II (Count III). Lastly, Goulet asserts a medical malpractice and ordinary negligence state claim against Dr. Hereford and Nurse Robinson in their individual capacities (Count IV).

Defendants filed a motion to dismiss the Amended Complaint for failure to state a claim.[3] ECF No. 66. Goulet opposes. ECF No. 69.

## II.

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim

---

[2] The only remaining defendants are the MRRJ Authority Board, Jeffrey Newton, Jack Lee, Angela Robinson, and Lee Hereford. All other defendants have been dismissed.

[3] Only Counts II and III are the subject of the motion to dismiss.

to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Id. at 679; see also Simmons v. United Mortg. & Loan Invest, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, see Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff, see Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences[,]" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). "'Thus, in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of the allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" Zak v. Chelsea Therapeutics Int'l Ltd, 780 F.3d 597, 606 (4th Cir. 2015) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)). However, the court may consider documents outside of the amended complaint if they are "integral to the Complaint" and there is no dispute regarding their authenticity. Goines v. Valley Comm. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A document is "integral to the Complaint" where the Complaint "relies heavily upon its terms and effect. . . ." Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

## III.

### A.     Count II – Declaratory and Injunctive Relief Against MRRJ Authority Board and Jeffrey Newton

To begin, Count II must be dismissed as moot since Goulet has been transferred from MRRJ to Rockingham-Harrisonburg Regional Jail.

"Mootness questions often arise in cases involving inmate challenges to prison policies or conditions, and courts, including our own, have held that the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief, even if a claim for money damages survives." Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007); Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). A transferred inmate's declaratory and injunctive claims are moot because when an

inmate leaves the facility where he was subject to the policy, practice, or condition at issue, he no longer has a cognizable interest in the resolution of said claim. Incumaa, 507 F.3d at 287. This holds true even where an inmate may be transferred back to the offending facility as long as there is "no reasonable expectation that the wrong will be repeated[.]" Id. at 288; see also United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953).

Here, Goulet has been transferred from MRRJ to Rockingham-Harrisonburg Regional Jail. Goulet does not allege that he currently faces the offending ladder policy, nor does he plead any facts sufficient to show that he is in danger of being sent back to MRRJ and being subjected to the same policy. As such, Count II must be dismissed.

### B.   Count III – Monell Claim Against MRRJ Authority Board and Jack Lee[4]

Count III must also be dismissed because Goulet fails to show Lee's personal involvement in Goulet's injury. As such, the claim cannot stand.

Section 1983 allows for an official acting under the color of state law to be sued for an alleged deprivation of a federal constitutional right. Philips v. Pitt Cnty. Mem. Hosp., F.3d 176, 180 (4th Cir. 2009). There are three ways a state official can be sued under § 1983: official capacity, personal capacity, and supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016). At issue here is personal capacity.[5] Liability only attaches where action or

---

[4] On brief, Goulet concedes that the MRRJ Authority Board and Lee in his official capacity are improper defendants for Count III. As such, Lee in his individual capacity is the sole defendant remaining. See Resp. to Mot. to Dismiss, ECF No. 69, at 5 n.2.

[5] Although Goulet references supervisory liability in his Monell claim, compare ECF No. 69 at 5 ("Further, there is no need for Defendant Lee to be aware of Mr. Goulet's placement on a top bunk in particular to be liable under supervisory liability."), he expressly states that supervisory liability is not alleged, with id. at 5 ("The Defendant asserts that he cannot be held for supervisory liability. There is, however, no claim for supervisory liability in the Amended Complaint, Count III is a Monell claim for direct liability."). As such, the court will consider Goulet's claims to be pleaded solely under personal liability.

inaction occurred due to an "official municipal policy of some nature caus[ing] a constitutional tort." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).

In order to establish personal liability under § 1983, "the plaintiff must 'affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights.'" Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)); see also Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). Specifically, the official's "individual actions" must "violate[] the Constitution." Iqbal, 556 U.S. at 676. An official's knowledge alone of a deprivation is insufficient to impute liability. Wright, 766 F.2d at 850.

Goulet asserts that Lee is liable because Goulet puts forth sufficiently plead facts to plausibly suggest that "conditions of confinement present a sufficiently serious risk of harm and . . . that [Lee] was deliberately indifferent to that risk." ECF No. 69 at 5; see also Porter v. Clarke, 923 F.3d 348, 355 (4th Cir. 2019). Goulet contends Lee is liable because he knew MRRJ did not have ladders in its cells for inmates, causing inmates to frequently injure themselves, and Lee did not take steps to rectify this during his tenure as superintendent. ECF No. 69 at 5-6. For support, Goulet cites Gordon v. Schilling, 937 F.3d 348 (4th Cir. 2019).

In Schilling, Carl Gordon was a Virginia inmate who had Hepatitis C ("HCV") and was parole eligible. The medical director of the Virginia Department of Corrections ("VDOC"), Fred Schilling, was responsible for ensuring "compliance with the medical operating procedures at the institutional level[,]" and required Schilling to review "each policy . . . in the [VDOC] health care delivery system at least annually" and revise "if necessary." Schilling, 937 F.3d at 353. This included a 2004 Guideline promulgated by the VDOC which set forth criteria

VDOC physicians had to follow when diagnosing and treating inmates for HCV. Id. at 351-52. The 2004 Guideline contained a provision that excluded inmates who had HCV from receiving treatment if they were eligible for parole or had less than 24 months remaining of their sentence. Id. at 352.

Mark Amonette became the VDOC's Chief Physician in March 2013. He then suspended the 2004 Guideline in February 2014 for one year and stopped all inmate HCV treatment pending the adoption of new treatment guidelines despite knowing that interrupting HCV treatment would likely be detrimental to inmates' health outcomes. Id. at 354. Gordon sued Schilling and Amonette, alleging that he was denied medical treatment for HCV in violation of his Eighth Amendment rights. The Fourth Circuit found that Amonette was personally involved because he did not rescind the 2004 HCV Guideline for eleven months after becoming the Chief Physician, and he actively halted all HCV treatment for inmates despite knowing that stopping their treatment would be averse to the inmates' health. Id. at 360-62.

Even when viewed in the light most favorable to Goulet, the facts alleged are insufficient to hold Lee liable for several reasons. First, Lee was terminated from his position as superintendent in December 2018, and Goulet was injured on May 12, 2019. If Lee had plans to address the allegedly dangerous condition of having no ladder in the cells, he had no opportunity to do so after December 2018. Moreover, Goulet does not even allege that he was incarcerated at MRRJ throughout any of Lee's tenure as superintendent. Lee cannot be held liable for events where he had no personal involvement because he was not employed by MRRJ at the time of Goulet's injury.

Second, <u>Schilling</u> is inapposite. Here, there is no official policy, practice, or condition at issue. It is not alleged that not having ladders in the cells was a MRRJ policy, practice, or condition. Nor does Goulet allege that Lee removed or prohibited ladder use in cells. To be sure, even if Lee knew of inmates allegedly injuring themselves because of the lack of ladders in cells, that would be insufficient to impose personal liability. <u>See</u> <u>Wright</u>, 766 F.2d at 850. Plainly, the mere lack of ladders in cells does not equate to the promulgation of an official no-ladder policy at MRRJ. Moreover, because not having ladders in cells was not an official policy, practice, or condition, Lee's inaction in providing them is insufficient to attach liability. In fact, after Goulet's injury, he was given a ladder in his cell. <u>See</u> Am. Compl., ECF No. 53, at ¶ 129. Additionally, <u>Schilling</u> is distinguishable because there is no personal involvement here. Unlike <u>Schilling</u> where Amonette rescinded the 2004 VDOC Guideline, Lee did not rescind or halt any policy, practice, or condition at MRRJ.

In sum, Goulet has not pled facts sufficient to plausibly suggest that Lee was personally involved in depriving Goulet of a constitutional right. In short, Lee's inaction of providing ladders at a time prior to Goulet's fall does not rise to the level of a constitutional violation. As such, Goulet cannot show Lee's personal involvement with his injury, and Count III must be dismissed.

## IV.

For these reasons, Goulet has failed to state a claim upon which relief can be granted. As such, the court **GRANTS** defendants' motion to dismiss, and Counts II and III are **DISMISSED**. Because there are no remaining allegations in the Amended Complaint as to

the MRRJ Authority Board, Jeffrey Newton, or Jack Lee, the Clerk shall **TERMINATE** them as defendants.

An appropriate order will be entered.

Entered:    September 22, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.09.22 13:59:15 -04'00'

Michael F. Urbanski
Chief United States District Judge