# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **LOUIS MICHAEL GOULET,** | ) | |
| Plaintiff. | ) | |
| v. | ) | **Civil No.: 7:19-cv-0701** |
| | ) | |
| **LEE HEREFORD, MD, et al,** | ) | **By: Michael F. Urbanski** |
| Defendants. | ) | **Chief United States** |
| | ) | **District Judge** |

## MEMORANDUM OPINION

Plaintiff Louis Michael Goulet ("Goulet") filed an Amended Complaint under 28 U.S.C. § 1983 against Defendants Lee Hereford MD ("Hereford") and Angela Robinson, LPN, ("Robinson") alleging in Count I that these two prison medical providers failed to adequately treat his broken arm in violation of the Eighth Amendment.[1] Defendants filed a motion for summary judgment, ECF No. 96, a motion for sanctions, ECF No. 98, and a motion for sanctions and in camera review, ECF No. 100. For the reasons stated in this opinion, defendants' motion for summary judgment, ECF No. 96 is **GRANTED**, defendants' motion for sanctions, ECF No. 98 is **DENIED**, and defendants' motion for sanctions and in camera review is **DENIED** as moot.

---

[1] Counts II and III, alleging civil rights violations based on Goulet's conditions of confinement relating to the lack of a ladder for his bunk bed, were dismissed by Order dated September 22, 2021. Order, ECF No. 79. Goulet presented no expert medical evidence on the standard of care or claimed medical malpractice of Nurse Robinson and Dr. Hereford alleged in Count IV. As such, it was recognized at the October 21, 2022, hearing on the motion for summary judgment that the state law claims alleged in Count IV could not proceed without expert testimony as to the breach of the standard of care and causation. See Va. Code § 8.01-581.20; Raines v. Lutz, 231 Va. 110, 113, 341 S.E.2d 194, 196 (1986) ("We have held that expert testimony is ordinarily necessary to establish the appropriate standard of care, to establish a deviation from the standard, and to establish that such a deviation was the proximate cause of the claimed damages."). At the October 21, 2022, hearing, Goulet's counsel also abandoned any deliberate indifference claim regarding Dr. Hereford's surgical and post-surgical claim of Goulet. Therefore, only Count I of the Amended Complaint, alleging deliberate indifference in violation of the Eighth Amendment concerning Goulet's medical treatment prior to his surgery on May 20, 2019, remains at issue.

# I.

On May 12, 2019, Goulet sustained an injury while incarcerated at the Middle River Regional Jail ("MRRJ"). Goulet alleges that Robinson and Hereford did not adequately treat his injury and that the timeline of their actions, the decision to withhold certain medications, and failure to adequately provide Goulet with physical therapy following surgery caused him unnecessary pain and suffering and hindered the future mobility of his arm.

Goulet broke his arm at approximately 7:00 a.m. on May 12, 2019, when he fell climbing down from his top bunk which did not have a ladder. Am. Compl., ECF No. 53 at 7. Goulet tried to use the cell call-button to alert MRRJ staff of his injury but the button did not work. Id. at 8. 45 minutes after his fall, Goulet notified an officer passing his cell that he needed immediate medical treatment for his injury. Id.

At 7:45 a.m. on May 12, 2019, Nurse Robinson examined Goulet. Id. at 9. Goulet alleges that during the examination he was asked to lift his arm above his shoulder but was unable to do so. Id. Goulet admits that Robinson provided him with a sling for his arm and Ibuprofen, but Goulet complains that Robinson did not send him to the hospital, order an x-ray, give him stronger pain medication, or record the details of the examination at that time. Id. at 10.

Robinson's written account of her May 12 examination of Goulet, penned two days later on May 14, states as follows:

> 5-12-19 @ 0655 Inmate was brought to medical with complaints of a fall[.] [Inmate] stated he was getting down from the top bunk, placed his foot on the metal table to get down and slipped and fell to the ground. Inmate alert and oriented, did not lose consciousness or have any head trauma. [I]nmate was complaining of pain in R Elbow. [U]pon observing inmate there

> was no bruising, deformities or redness to the elbow, [and] both R and L arm looked the same. Gave inmate an ice pack, and 800 mg Ibuprofen[,] placed arm in a sling to secure arm, instructed inmate if pain got worse or there was any swelling to contact pod officer to call medical. Instructed inmate that I would place him on the physician list to be seen by Dr. Hereford and ask for a VO for X-Ray. Inmate agreed and returned to pod[.]

Patient Notes, ECF No. 97-1 at 21. Robinson's notes reflect that Goulet said his pain was at level 3. Consistent with her Patient Notes, Robinson testified Goulet's arm showed no obvious signs of fracturing or swelling during her examination and his answers to her diagnostic questions did not prompt her to believe there was nerve damage. Robinson Dep., ECF No. 97-2, at 2.  Robinson ensured that Goulet could still move his arm. Id. at 3. Furthermore, when questioned by Robinson, Goulet told Robinson he was fine, did not need to go anywhere, and just needed Ibuprofen to address his injury. Id. Robinson treated Goulet by providing him with a sling, ice packs, and pain medication. Id.

The medical records reflect that later that same day, May 12, Goulet "showed up at pill call with sling to his arm stating he hurt it. Nurse referral to see Hereford ASAP." Patient Notes, ECF No. 97-1, at 21.

The next day, May 13, Goulet was "seen in medical for complaints of a broken arm." Id. The Patient Notes state as follows:

> Inmate seen in medical for complaints of a broken arm. An obvious R Humerus fx is observed. Inmate presents in a sling which he reports he received Sunday morning after falling out of his bunk and hitting his arm on the table. Bruising and swelling noted. Ibuprofen STAT given. Regina Chestnut was able to get ahold of Dr Hereford who recommends a sling and swath with an ace bandage, ice packs and Ibuprofen until he can be seen tomorrow. Nurse Leonard placed a call to dynamic mobile imaging for a STAT xray, they called back to confirm that they could be here within two hours. Inmate moved to the ward.

3

Id. Nurse Zoe Humphrey's noted lists Goulet's pain at level 8. Id.

Consistently, Hereford's declaration states:

> I was contacted, and I recommended a sling and ace swathe in addition to the ice packs and ibuprofen until I was able to see him on May 14, 2019. Based upon the report I received, I determined that Plaintiff could safely wait to be seen until the next day. Nursing staff called the x-ray company to arrange for an x-ray.

Decl. of Dr. Lee Hereford, ECF No. 97-1, at 5 ¶ 12.

The nursing notes reflect that Goulet was seen the next morning, May 14, at which time it was noted "Stated arm pain not as bad with Ace wrap around sling. On list to see doctor." Patient Notes, ECF No. 97-1, at 21. The nursing notes from the afternoon of May 14 reflect that Goulet refused to have his vital signs taken and voiced "no medical complaints at this time." Id.

Hereford examined Goulet on the evening of May 14, and entered the following patient note:

> CURRENT MEDICATIONS:
> 1. ASPIRIN 325MG 1 PO BID
> 2. IBUPROFEN 800MG 1 PO TID
>
> [R]ight hand dominant male with fall with right humeral mid shaft fracture 2 days ago. [I] was called and instructed to put in sling and ace swath. [P]resent for follow up with immobilization and minimal pain. Exam shows sling and swath in place and minimal pain. NVID in hand and good distal radial nerve function. [H]is xrays show minimal displaced midshaft humeral shaft fracture. [H]e is otherwise health and due to good health status, location of fracture and his active age the standard of care is IM rodding. [W]ill schedule and proceed with this. [H]e understands risks and post op healing and risk of NV injury and nonunion etc.

Id. Consistently, Hereford's declaration states:

4

> I performed a neurovascular assessment on Plaintiff to ensure he had good circulation to his arm. The exam revealed he was neurovascularly intact distally, meaning Plaintiff's circulation was good. Plaintiff's hand also had good distal radial nerve function, meaning there was no apparent nerve damage to his hand. Plaintiff's x-rays revealed his fracture was minimally displaced, managing the change in position of Plaintiff's bones was slight and not significant. Based on my exam, I used my judgment and discretion to determine that Plaintiff's fracture did not warrant emergency surgery. Because Plaintiff's arm was immobilized in a sling and he was given pain and anti-inflammatory medication, no substantial harm was caused by the delay in the time Plaintiff broke his arm on May 12, 2019, and the time he saw medical on May 14, 2019. I recommended Plaintiff undergo open reduction internal fixation surgery. I scheduled Plaintiff for this procedure on my next surgery date, May 20, 2019.

Decl. of Dr. Lee Hereford, ECF No. 97-1, ¶ 14.

Goulet complains that Hereford should have operated on him sooner and prescribed stronger narcotic pain medication prior to surgery. Am. Compl., ECF 53, at 25. After surgery, Goulet received Oxycodone and Percocet. Id. at 22. Goulet alleges that Hereford's decisions on May 14 to not immediately stabilize his broken arm, not authorize his transfer to an off site emergency room so another physician could provide treatment, and not provide him with stronger pain relief medication caused him additional pain and suffering. Id. at 24. From May 13 to May 20, Goulet stayed in the MRRJ medical department awaiting surgery. Id. at 25. During this time, he believes his pain medicine was insufficient and the conditions of the space caused him unnecessary physical pain. Id. at 25-27.

On the morning of May 20, 2019, Hereford operated on Goulet's arm at the Augusta Orthopedic Surgery Hospital. Id. After surgery, Hereford prescribed Goulet Oxycodone and Percocet. Hereford conducted four post-operation consultations with Goulet. Id. at 29. At the final consultation, Hereford noted that Goulet had near full range of motion, a healed fracture,

that Goulet should be admitted to the MRRJ general population and should do self-orchestrated exercises. Id. at 31-32. Goulet believes Hereford's assessment that he possessed the full range of motion was inaccurate. Id. at 32. Goulet claims that following surgery and contrary to his wishes, he was never prescribed any external physical therapy or rehabilitation to recover mobility in his arm. Id. at 33.

In November 2019, Goulet did a follow up x-ray with Dr. Patrick Ober ("Ober") of his right arm. Id. at 33. Goulet alleges that Ober told him that his right arm was permanently damaged and that he would not have waited so long to refer Goulet for surgery. Id.

## II.

Under Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party

must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

# III.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition applies to more than "physically barbarous punishments." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Protection covers the "treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). The Eighth Amendment requires prison officials to "provide humane conditions of confinement… [and] ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). To that end, a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104. Prisoners, like Goulet, alleging to have been subjected to unconstitutional conditions of confinement must satisfy a two-prong test articulated by the Supreme Court in Farmer. The two-prong test has an objective and subjective component.

Farmer's "objective" prong requires the plaintiff to demonstrate that "the deprivation alleged is, objectively sufficiently serious." Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A medical condition is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"or "a delay in treatment causes a life-long handicap or permanent loss." See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008); Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). Additionally, "[a] medical condition is shown as objectively serious when it 'would result in further significant injury or unnecessary and wanton infliction

of pain if not treated.'" Campbell v. Sherrill, No. 7:16CV00584, 2018 WL 3614214, at *2 (W.D. Va. July 27, 2018) (quoting Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010)).

Farmer's "subjective" prong requires the plaintiff to demonstrate that prison officials acted with a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297). The requisite state of mind is deliberate indifference. Id. To prove deliberate indifference, the plaintiff must show that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Id. at 837. Put differently, the plaintiff must show that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and ... dr[ew] th[at] inference." Id. (emphasis added). Deliberate indifference is "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." Id. at 835. It "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (citing Farmer, 511 U.S. at 835). Under this standard, mere "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not actionable absent exceptional circumstances. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970)).

Finding deliberate indifference requires proof of the official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837–39). The plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge of the excessive risk and

medical condition or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Farmer, 511 U.S. at 842).

A prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." Miltier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990), overruled in part on other grounds by Farmer, 511 U.S. at 837. However, even officials who acted with deliberate indifference may be "free from liability if they responded reasonably to the risk." Farmer, 511 U.S. at 844.

### i. Deliberate Indifference Claim Against Robinson

Evaluating the facts in a light most favorable to Goulet, a jury could determine that his injury satisfied Farmer's objective prong. Delayed treatment of a prisoner's broken arm is recognized as a serious injury. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978) ("A broken arm can be an excruciating injury, and few people would freely choose to delay twenty-two hours or even eleven hours in seeking a doctor's care."); Cokely v. Townley, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991) (A three-day delay in providing medical treatment for an inmate's broken hand was a serious medical need.).

There is a factual dispute about the obviousness that Goulet's injury was a broken arm and the severity of his known pain at the time of Robinson's initial examination. Robinson asserts that at the initial examination, there were no obvious signs of fracture, swelling, or nerve damage of Goulet's arm. ECF No. 97 at 6. Goulet asserts that his arm was visibly broken and supports his assertion with observations from nurses and other non-medical staff who

10

saw his arm hours and days after Robinson. ECF No. 108 at 2-3. The record does not contain statements from these nurses and non-medical staff verifying the obviousness of Goulet's injury aside from log notes in Goulet's medical file. <u>See</u> ECF No. 97-2. Additionally, the log notes and statements from these other witnesses show they did not see Goulet until multiple hours to a day after Robinson's initial examination. <u>Id.</u> Despite the factual inconsistencies, there is sufficient evidence for a factfinder to determine that Goulet's injury was sufficiently serious to satisfy the objective prong because of the pain Goulet voiced and the later confirmation that he sustained a fractured bone from his fall.

However, there is insufficient evidence for a jury to find that Robinson's actions satisfy <u>Farmer</u>'s subjective prong and that she was deliberately indifferent in caring for Goulet. Evaluation of the subjective prong must be done according to the facts in a light most favorable to Goulet, but this analysis still requires showing that Robinson "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." <u>Farmer</u>, 511 U.S. at 837. Therefore, while there may be factual disputes about whether Robinson understood the severity and full extent of Goulet's injury at the time of the initial examination, no reasonable factfinder could determine that she recklessly ignored the symptoms visible and known to her or failed to respond reasonably to the situation presented. While Goulet asserts that Robinson displayed deliberate indifference because she did not take the steps he believed were reasonable to treat his injury on May 12, there is no support in the record for Goulet's assertion that Robinson disregarded Goulet's health or the risks presented to her.

As reflected in the Patient Notes, Robinson treated Goulet immediately, and after examining him, noted no "bruising, deformities or redness to the elbow, both R and L arm

looked the same." Patient Notes, ECF No. 97-1, at 21.  After being advised by Goulet that his pain level was a 3, Robinson treated him with a sling, Ibuprofen, and an ice pack. In evaluating the reasonableness of Robinson's immediate care, it is important to note that her treatment essentially mirrored those steps taken by other MRRJ nurses and Dr. Hereford prior to surgery. While Goulet believes that he should have been taken to the hospital immediately and been prescribed stronger pain medication prior to surgery, this amounts to a difference of medical opinion as to the treatment rendered which is insufficient to support a finding of deliberate indifference. See Estelle v. Gamble, 429 U.S. 97, 107 (1976) ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); Robinson Decl., ECF No. 97-2 at 3 (Robinson was not authorized to provide Goulet with narcotic medications or order an x-ray).

Goulet has no expert evidence to support his claim of deliberate indifference, and his claim rests in significant part on his assertion that the internal MRRJ Medical Guidelines concerning Fractures-Dislocations required Robinson to immediately transfer him to a hospital without delay. MRRJ Medical Guidelines, ECF No. 108-6. Goulet's argument focuses on the following portion of those guidelines, authored by Hereford:

ORTHOPEDIC EMERGENCY: Nursing Intervention

**Immediate Emergency Care and ambulance transfer to hospital without delay:**

1. Impaired circulation, shock, hemorrhage.
2. Displaced fracture, dislocations.
3. Spinal or skull fracture

Treatment:

1. Immobilize affected limb

2. Elevate affected limb
3. Apply ice

Nursing Intervention:

1. Immobilize prior to moving.
2. Cover open wounds with sterile dressing
3. Splint joint above and below injury site.
4. Sling for upper extremity.
5. No traction should be applied to a compound fracture
6. Ice to closed injury site
7. Refer to a facility health care provider or Emergency Room

Follow up:   Arrange for care as ordered by facility health care provider.

ECF 108-6, at 1. Goulet's argument that Robinson's care was deliberately indifferent by failing to immediately transport him to the hospital ignores the undisputed fact that Hereford, the author of those guidelines, did not consider Goulet's fracture to be an emergency requiring immediate medical transport. Simply put, the evidence in this case does not support Goulet's assertion that his medical condition was an emergency requiring his immediate transport to the hospital. Given the fact that neither Robinson nor Hereford perceived Goulet's condition

13

to be a medical emergency, Goulet's reliance on MRRJ's Orthopedic Emergency: Nursing Intervention guidelines does not provide evidence sufficient to meet the subjective element of deliberate indifference. Under the circumstances facing Robinson, no reasonable factfinder could conclude that Robinson acted with deliberate indifference because of her decision to treat treating Goulet with a sling, ice packs, and pain medication rather than transfer him to hospital.

The facts do not support a claim of deliberate indifference here. Goulet saw Robinson on the morning of May 12 and given a sling, ice packs, and Ibuprofen. Goulet was seen by a nurse at pill call that afternoon and again in medical the next day and was moved out of general population to the medical unit. Goulet was seen twice by nurses in the medical unit on May 14 before Hereford examined him that evening. Goulet remained in the medical unit and did not voice any significant complaints to nursing staff prior to his surgery on May 20.[2] Indeed, while in the medical unit, Goulet regularly refused to let the medical staff take his vital signs. Patient Notes, ECF No. 97-1, at 20-21.

Finally, while expert testimony on the severity of an injury is not required when the risk of leaving that injury untreated is apparent to a layperson, Scinto v. Stansberry, 841 F.3d 219, 230 (4th Cir. 2016) (citing Blackmore v. Kalamazoo Cty., 390 F.3d 890, 899–900 (6th Cir. 2004)), that is not the case here, as evident from the treatment provided Goulet as evidenced in the Patient Notes, declarations, and deposition testimony. Instead, Goulet simply disagrees

---

[2] The patient notes reflect no significant problems prior to Goulet's surgery on May 20. Goulet complained of numbness on his right hand on the afternoon of May 16 (which was evaluated by Hereford), and that it was hard getting comfortable on May 19, the afternoon before his surgery. Patient Notes, ECF No. 97-1, at 20. No complaints were voiced on May 11, May 15, the morning of May 16, and May 18. Id.

with the treatment he was provided, and his failure to marshal any medical evidence, expert or otherwise, to support his claim of deliberate indifference, compels entry of summary judgment for Robinson.

### ii. Deliberate Indifference Claim Against Hereford

Nor could a reasonable jury determine that Hereford was deliberately indifferent in treating Goulet. Hereford was advised of Goulet's condition by telephone on May 13 and ordered treatment for him. Patient Notes, ECF No. 97-1, at 21. Goulet was transferred from general population to the medical unit. Id. Hereford examined Goulet the next day, May 14, 2019. Id. At the examination, Hereford diagnosed Goulet with suffering from a minimal displaced midshaft humeral shaft fracture and determined he was otherwise in good health. Id. Hereford continued Robinson's initial treatment of Goulet—Ibuprofen, sling, and ice packs—and added an ace swath. Id. Hereford scheduled Goulet's surgery for May 20, his next available surgical date. Id. While Goulet asserts that Hereford's decisions not to immediately perform surgery himself or arrange for immediate surgery with an outside hospital violated his Eighth Amendment rights and caused him substantial harm, the record does not support this conclusion.

Claims against Hereford, like those against Robinson, must satisfy the objective and subjective components for Eighth Amendment claims specified in Farmer. In circumstances alleging that a delay in treatment constituted an Eighth Amendment violation, the plaintiff can show that the delay caused him substantial harm. See Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008). Substantial harm is evidenced by either an attributable change in the plaintiff's condition or considerable and severe pain that resulted because of the delay in

treatment. Id. (Although an inmate suffered additional pain because of a hernia, the doctor's decision to delay and ultimately not get the inmate surgery was not deliberate indifference because the plaintiff's condition did not worsen as a result of the delay. His hernia did not change in size or severity and his pain was addressed with medication.).

There is no evidence in this case to support Goulet's claim that he suffered substantial harm by Hereford's determination on May 14 that his broken arm was not a medical emergency requiring immediate surgery. Hereford Decl., ECF No. 97-1 at 3. At the May 14 examination, Goulet received immediate medical attention from Hereford who reviewed the x-rays, diagnosed the fracture as "minimally displaced and not an emergency" but one that should be operated on with a three-week time span, prescribed pain relievers, ordered segregation in the medical ward from the MRRJ general population until surgery, and arranged for corrective surgery to occur as soon as Hereford was available. ECF 97-1 at 3. After surgery, Hereford prescribed Percocet and Oxycodone to Goulet to address post-surgical pain, ordered follow up consultations, and provided a healing cream to use on the scar tissue. At their last examination, according to Hereford, Goulet displayed near full range of motion and x-rays showed that the fracture was healed. ECF No. 97-1 at 12. Therefore, even if a jury objectively determined that Goulet's pain between May 14 and May 20 was substantially harmful to him, there is no reasonable basis for a determination that Hereford was deliberately indifferent in deciding the proper method of treatment or that his decisions were unreasonable given his medical expertise. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975); Shields v. Kunkel, 442 F.2d 409 (9th Cir. 1971) (difference of opinion between patient, prison inmate, and physician,

without more, does not state a claim under statute providing civil action for deprivation of rights.).

Goulet's argument that Hereford displayed deliberate indifference by allegedly violating MRRJ's medical guidelines by not immediately sending Goulet to an off-site facility after the initial consultation is neither legally nor factually supported. Prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation. See Gardner v. Howard, 109 F.3d 427, 430 (8th Cir.1997). Therefore, any failure by prison officials to follow internal correctional policies is insufficient, without more, to support a claim. Jackson v. Sampson, 536 F. App'x 356, 357–58 (4th Cir. 2013).[3]

As a factual matter, Hereford's unchallenged medical judgment that Goulet's circumstances did not create a medical emergency render the Orthopedic Emergency: Nursing Intervention guidelines inapplicable to this case. Hereford was advised of Goulet's condition by nursing staff on May 13 and ordered appropriate care, including a sling, ace swath, ibuprofen, and ice packs, until he could see him the next day. A mobile x-ray was requested and an x-ray was taken of Goulet's arm. When Hereford examined Goulet the next day, he continued that treatment and scheduled surgery on his next available surgical day, May 20, 2019. While Goulet believes he should have been operated on sooner, Hereford's medical

---

[3] Goulet's supplemental citations fail to support his argument as to the effect of the guidelines on evaluation of Hereford's actions. See Hope v. Pelzer, 536 U.S. 730, 744 (2002) (Hope is distinguishable from this case because the defendant was specifically told about the practice's unconstitutionality by the DOJ. However, even this in itself did not create a presumption of illegality.); Groh v. Ramirez, 540 U.S. 551, 564 (2004) (failure to adhere to department guidelines supported finding a constitutional violation had occurred but was not alone determinative).

judgment was that the minimally displaced fracture was not an emergency and could be surgically repaired at his next available surgery date. Importantly, as with Robinson, Goulet offers no expert opinion that the delay in operating on Goulet was negligent, much less violated the Eighth Amendment.

Goulet attributes significance to the fact that the radiologist's report, finding a mildly displaced fracture of the mid shaft of the humerus, notes as history "can see bone moving." Radiology Report, ECF No. 108-4. The radiology report is consistent with the nursing note by Nurse Humphrey on May 13 that "[b]ruising and swelling [were] noted and that there was an "obvious R Humerus fx." Patient Notes, ECF No. 97-1, at 21. But Hereford reviewed the radiology report, heard from nursing staff, and examined Goulet himself on May 14. Hereford continued Goulet's treatment in the medical ward for the next five days and operated on Goulet's arm on May 20. In the absence of any expert evidence faulting Hereford's treatment of Goulet, there is nothing in the record from which a reasonable jury could conclude that Hereford was deliberately indifferent in violation of the Eighth Amendment.[4]

---

[4] As noted in footnote 1, at the October 21, 2022, summary judgment hearing, Goulet's counsel withdrew his claim of surgical or post-surgical deliberate indifference against Hereford, focusing his case on the claim of deliberate indifference between May 13 and May 20 prior to surgery. In any event, the record indicates that Hereford adequately treated Goulet after the operation and Goulet's recovery did not require additional physical therapy. Hereford treated Goulet's recovery needs reasonably by giving him exercises to perform on his own. Goulet's progress was affirmed by his mobility progression at post-operation surgery appointments. Patient Notes, ECF No. 97-1 at 7. Hereford's notes show that Goulet had near full range of motion six weeks after surgery. Id. at 12.

While Goulet asserts that he spoke with Hereford a few times concerning physical therapy in June and July 2019, ECF No. 108-3 at 7, the decision over whether Goulet should have received outside physical therapy was between Goulet and his doctor. Goulet's assertion that he deserved greater care is unsupported by testimony verifying that he lost muscle, mobility in his arm, or was negatively impacted by not having physical therapy. These allegations, while asserted in the Amended Complaint, are conclusory. See ECF No. 53 at 35-36. Because Hereford's medical logs documenting Goulet's healing and post operation progression are uncontradicted by expert opinion or any other evidence, a factfinder could not conclude that Hereford's decisions regarding Goulet's physical therapy constituted deliberate indifference.

Goulet's inability to adduce any expert testimony that the treatment provided him by Robinson and Hereford was deliberately indifferent, while not in itself dispositive, compounds his failure of proof.

In a § 1983 action, the plaintiff must prove that the defendant's conduct was the proximate cause of a claimed injury. <u>Kane v. Lewis</u>, 604 F. App'x 229, 234 (4th Cir. 2015). "For damages to be proximately caused by a constitutional tort, a plaintiff must show that, except for that constitutional tort, such injuries and damages would not have occurred." <u>McCaskill v. Yankalunas</u>, 245 F. App'x 274, 279 (4th Cir. 2007) (quoting <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1168 (11th Cir. 2000)).

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

Courts have consistently held that "[n]o expert testimony is required to assist jurors in determining the cause of injuries that are within their common experiences or observations." <u>Hendrickson v. Cooper</u>, 589 F.3d 887, 892 (7th Cir. 2009). For instance, "a causal connection between an altercation and an injury may be inferred in cases in which a visible injury or a sudden onset of an injury occurs." <u>Ziesmer v. Hagen</u>, 785 F.3d 1233, 1238 (8th Cir. 2015); <u>see also</u> <u>Zartner</u>, 760 F. App'x at 563 (noting that "expert testimony might be unnecessary to find causation when a brawl leads to a broken nose or black eye"). Additionally, a plaintiff may rely on his own testimony to establish that he experienced pain as a result of the alleged use of excessive force. <u>See</u> <u>Hendrickson</u>, 589 F.3d at 892 (rejecting the defendant's argument that the plaintiff was required to support his claims of increased back pain with expert medical evidence and concluding that the plaintiff's own testimony that the defendant "beat him up and it hurt really bad" was sufficient to prevail on a claim of excessive force); <u>Ziesmer</u>, 785 F.3d at 1239 (holding that neck pain reportedly experienced by the plaintiff shortly after an alleged altercation with an officer was "within the range of common experience" and did not require expert testimony) (internal quotation marks omitted).

On the other hand, proof of causation generally must be established by expert testimony when an injury is sophisticated or complex. <u>Ziesmer</u>, 785 F.3d at 1239. Likewise, "when an injury lacks an obvious origin and multiple causes are possible, expert medical testimony is necessary to prove causation between a use of force and an injury." <u>Zartner</u>, 760 F. App'x at 563; <u>see also</u> <u>Barnes v. Anderson</u>, 202 F.3d 150, 160 (2d Cir. 1999) (holding that the plaintiffs were required to produce expert medical evidence of causation in order to recover for a miscarriage under § 1983, given the uncertain timing of the pregnancy, the unclear nature of the physical contact challenged in the lawsuit, and the fact that the female plaintiff was physically assaulted by other individuals after the incident at issue).

Dillard v. Smith, 558 F. Supp. 3d 308, 312 (W.D. Va. 2021)

While a broken bone and associated pain are common experiences and observations within comprehension of ordinary individuals, that is not the case as to the appropriate treatment for a broken bone.  In a medical malpractice case under state law, expert testimony is necessary to provide the jury with the standard of care as to the appropriate course of treatment, deviation from the standard of care, and causation of any injuries Goulet claims. Goulet's failure to present any evidence to contradict Robinson's and Hereford's evidence that their care of Goulet was medically reasonable and within the standard of care significantly burdens his ability to prove deliberate indifference. Considering all of the evidence in the light most favorable to Goulet, it is clear that there are no genuine issues of material fact regarding Goulet's claim that Robinson and Hereford acted with deliberate indifference to his arm injury.[5]

### b.  Sanctions Motions, ECF Nos. 98 and 100

There are two motions for sanctions in this case. The first one is troubling and concerns plaintiff's failure to respond to requests for production of documents. ECF No. 98. Defendants served requests for production of documents with an original response deadline of May 19, 2022. This was extended to May 26, 2022. Goulet belatedly responded to the defendants' interrogatories on July 6, 2022, over a month after the requested deadline, but never responded to the document requests. Because of Goulet's failure to respond, defendants moved for sanctions under FCRP 37(d), requesting dismissal of the case with

---

[5] As such, the court need not address the issue of qualified immunity.

prejudice and the award of defendants' attorney fees. In the alternative, defendants sought the exclusion of all evidence requested by the defendants but not disclosed by the plaintiff.

> The Fourth Circuit Court traditionally employs a four-part test for determining whether dismissal is a proper sanction under Rule 37:
>
> (1) whether the noncomplying party acted in bad faith;
>
> (2) the amount of prejudice [a party's] noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence [the party] failed to produce;
>
> (3) the need for deterrence of the particular sort of noncompliance; and
>
> (4) the effectiveness of less drastic sanctions.
>
> Mutual Fed. Savings & Loan Ass'n v. Richards & Associates Inc., 872 F.2d 88, 92 (4th Cir.1989). The use of this test "insure[s] that only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default." Id.

Bizprolink, LLC v. Am. Online, Inc., 140 F. App'x 459, 462 (4th Cir. 2005).

After hearing from the parties through their briefings and oral argument on October 21, 2022, there is simply no excuse for plaintiff to have failed to respond to the requests for production of documents served by defendants. Nevertheless, the court declines to award sanctions given its ruling on the motion for summary judgment.

The second sanctions motion is easily resolved. This motion concerns whether plaintiff complied with Virginia Code § 8.01-20.1 regarding expert medical review of his claim before filing suit. Mot. for Sanctions, ECF No. 100. As plaintiff apparently complied with this statute, this motion is **DENIED** as moot.

**IV.**

Goulet was provided with medical care for his arm by Nurse Robinson on May 12 shortly after his fall, was seen again by other nurses that day and on May 13, and by Dr. Hereford on May 14, 2019. Goulet was placed in the MRRJ medical unit until his surgery on May 20, 2019. While Goulet disagrees with the treatment he was provided, he offers no expert evidence to support his deliberate indifference claim. While Goulet's argument focuses on MRRJ Orthopedic Emergency: Nursing Intervention guidelines, the evidence is undisputed that neither Robinson nor Hereford perceived Goulet's condition to be an emergency requiring immediate transport to the hospital. Absent such evidence, Goulet's case fails on the subjective prong of the deliberate indifference test. While Goulet disagrees with his course of treatment, there is no evidence, expert or otherwise, from which a reasonable jury could conclude that either Nurse Robinson or Dr. Hereford were deliberately indifferent in violation of the Eighth Amendment.

Accordingly, the defendants' motion for summary judgment, ECF No. 96 is **GRANTED**, defendants' motion for sanctions, ECF No. 98 is **DENIED**, and defendants' motion for sanctions and in camera review, ECF No. 100, is **DENIED** as moot. Plaintiff's claims against Hereford and Robinson are **DISMISSED WITH PREJUDICE** and the case stricken from the docket.

An appropriate order will be entered.

Entered: November 14, 2022

Digitally signed by Michael F.
Urbanski       Chief U.S. District
Judge
Date: 2022.11.14 15:33:14
-05'00'

Michael F. Urbanski
Chief United States District Judge